My name is Richard Perslany and I represent Joseph Abruska. Joseph suffered serious permanent injuries when he was crushed between a barge and a dock piling in August 2003 in Naknek, Alaska. He is appealing summary dismissal of his negligence per se claims against the dutiful owners of the barge, the Baron of Trader. At the time of his accident, Joseph was working in a narrow 18-inch portal. On one side were the shipping containers, which he was latching down, and on the other side was the safety device providing the two safety wires. Joseph was kneeling down properly to latch a turnbuckle into a pad eye in the deck part. He lost his balance, fell against the safety wire, fell over a loose lower safety wire, and underneath the upper safety wire. As he was falling down, he was able to grab hold of the loose lower safety wire, but when the barge subsequently moved back against the dock, he was crushed between the barge and the dock piling, again resulting in serious permanent injuries. Had the safety rail contained three courses of railings, which is required by Coast Guard regulations, he would not have fallen over the side of the barge. Moreover, had the lower wire been taut instead of loose, he also would not have fallen over the side of the barge. The defendants conducted an accident investigation after this incident. The defendants concluded that the lower safety wire was, quote, inadequate and improperly secured, end quote, and so loose that it, quote, did not provide an effective barrier, end quote. The defendants further found that Joseph, quote, was able to fall through the safety lines due to the lower line being slack, end quote, and that the loose safety wire was, quote, a major contributing factor, end quote, to the accident. Now, Joseph brought two claims against the vessel owner. He brought a negligence claim and a first aid claim, and the district court found that the defendant's summary judgment on both, and we are appealing both. Let me ask you about the first aid claim, which, frankly, I consider the weaker of your claims. Wasn't there really an exemption from the Coast Guard when they inspected it and said it was okay? There was a certificate of inspection issued for the Baron of Trader, but there is no evidence that there was any indication that there was a specific determination made that the exemption language in the Coast Guard Regulation 46 CFR 92.25-5 was made. Well, how precise do you have to be? Well, more importantly, even if they concluded that the exemption applied, there wasn't a reasonable conclusion because it certainly was not unreasonable and impractical to have a third railing on the Baron of Trader. Well, but then you're arguing the rules say the Coast Guard rule applies unless it's exempted. The exemption is there. You may disagree with it, but you no longer have negligence per se. Well, actually, the exemption doesn't say the Coast Guard can choose at its discretion whether or not the third railing should be there. The exemption has a very specific requirement. It requires the Coast Guard to determine that the installation of rails of such height will be unreasonable and impractical for the business of the vessel. And in this case, all the evidence was that it was not unreasonable. It was not. Well, there's no evidence that there's no assessment from the Coast Guard other than the inspection report. Is that correct? That's right. And so even if there was a specific determination made or whether or not there was just a general one. And in this case, there's the Marine Safety Manual, which was the internal agency document generated by the Coast Guard that provided a categorical exemption for all freight barges everywhere. What's the information from this regulation? The problem you run into is that the defendants can logically rely on the Coast Guard. So your suit would be against the Coast Guard, which it isn't. Well, that is an issue that has not been raised in the district court and is not raised in the briefing. The only issue raised before the district court was whether or not did the fair enough trader violate the regulation. Precisely. But that has not been raised, that has not been briefed, that has not been argued. Precisely. Because they can rely on what the Coast Guard said. You want them not to be able to rely on what the Coast Guard said. Well, I think that the evidence shows that the fair enough trader violated the regulation. And in the mid, perhaps the argument says, well, we didn't know about it as industry standard. But of course in Martinez, this court and I said that industry standard is not a defense to negligence under 905B. Simply because an accident hasn't happened before or that a certain way things are done is industry standard is not a defense to negligence. I don't think it's a defense to negligence per se either. The Coast Guard regulation is clear on its face. There should be three wires. There were three wires. The fair enough trader violated the regulation. And I think that what happened in this case is that both the defense and the district court below spent a lot of time trying to basically rewrite the regulation to say that, well, two wires are okay so long as two wires are reasonable. But of course the abstract question of whether or not three railings or two railings should be required generally has already been answered by the regulation. Three railings are required unless it's unreasonable and impractical to have the third wire rail. And in this case, it was indisputable not unreasonable or impractical to have that third wire rail. It did not interfere with cargo operations. It would provide additional safety. And it was relatively easy to install. And while an agency's interpretation of its regulations is due deference, where an agency manual or interpretation conflicts with the plain terms of a regulation, it is no force of effect and there is no possible way to perform the blanket exemption in the Marine Safety Manual, which is the most likely reason why the Certificate of Inspection was issued because of the Marine Safety Manual. There's no way to rectify or to have the Marine Safety Manual work with the express language of 46 CFR 92.25-5. And in regards to the negligence per se claim, I'd also note that in the, for example, it is a defense of negligence per se claim that a regulation relies so obscure or inapplicable that it wouldn't be reasonable to hold that as a standard of care. But again, that's a decision that should be made by the district court in the first instance and not by this court in the first instance. And that's an issue that should be raised below, should be briefed below, and should be addressed. Is that a question of law? I believe it is, but I believe that none of the parties have briefed it, and so this court doesn't have the benefit of having the parties' arguments on this issue. Now, we know that the restatement does note that it's in highly unusual cases that laws are not going to be, such as this, removed outside the standard of care. So I think that if that is going to be an issue, that should be addressed by the district court for the first time in the first instance. Let me ask you on your negligence per se. I take it by reading it, it's clear that what this particular regulation goes to is protection of all people. Yes. But your client had a different standard than all people. Under our law, that I think is still applicable, it's an expert and experienced stevedore working on the reasonable care, which is different from all people. So why would the per se rule apply here? This is also an issue raised with the loose lower safety wire. What is the danger to expert and experienced long term, as opposed to just all people in general? And there's no doubt that the rule is that danger has to be expert and experienced long term. But in this case, there's been no evidence that Joseph was doing anything improper or that his inexperience contributed to any part of the accident. You're saying there's no evidence, so I am, but that isn't the issue. The issue is you have the burden to prove that your client functioning as an experienced, an expert at using reasonable care, that that standard was met. There was no expert testimony that was presented by your client on that test. Isn't it your burden to do that? Well, I'll address the expert testimony in just a second, but the general burden on the expert or experienced to answer directly to your first question. In this case, Joseph, any long term, an expert or inexperienced, would be working in the same manner in the same location as Joseph. And the loose safety wire and the missing third wire is a danger to everybody, expert or inexperienced. You're making that assumption. You're making an assumption that we don't have on the record. That is, there has not been any evidence that with a loose wire, with not three wires, that there would be an unassumable risk to an expert and experienced longshoreman acting reasonably. But the only way you get to that assumption that it wasn't a danger to an expert and experienced longshoreman is if you assume that an expert and experienced longshoreman would never lose his balance, would never have the need to rely on the safety wire. But you're doing this with a vacuum of evidence. All your client would have had to do was provide us with evidence in the record by an expert and experienced longshoreman. That's all that was necessary. But you're saying there's no evidence, therefore, my client wins. I'm not sure you've met your burden of proof. Could you help me with that? Yes, the evidence is that there was a safety wire. An expert and experienced longshoreman. There was testimony that Joseph was working as an expert and experienced longshoreman. In the sense that he was kneeling on one knee. He was attaching a turnbuckle. Where's the record on that? That he was working as an experienced? No, that what he was doing is what an experienced longshoreman. Joseph was not an experienced longshoreman. But the manner in which he was attaching the turnbuckle to the paddy was appropriate. Where was that evidence from an expert? I mean, there's the testimony of both Luke Donkerstoot and of Leo Nagle. And that's how you do that job. And that's the defense witnesses. So, therefore, we have Joseph doing his job. And then we have a loose safety wire and a missing third rail. And Joseph loses his balance. And the district court specifically recognized there was nothing about Joseph's inexperience that contributed to the accident. And the district court specifically recognized that even experienced longshoremen can lose their balance and stumble. I mean, I think Mr. Nagle testified to that, but that's such a general proposition. I don't think we need to have someone sit up there and testify. Yeah, people can trip on things or lose their balance on the barge. We have a specific barge. There's a difference in how barges are packed. There's a difference in the amount of space between the cargo and the edge. There are all of these factors. You're in generalities. I don't see where we can attach a standard without some evidence, expert evidence, not the generalizations. It seems to me to have been relatively easy, if what you say is accurate, to call an expert and to provide testimony. It isn't that it's impossible. It wasn't done. And I'm just wondering whether or not your burden has been met. I think in this case, expert testimony is not necessary to meet our burden of proof. You know, there clearly should be no expert testimony that says the safety wire needs to be taught instead of slapped. Even the defendant's own expert admits that safety wires should be taught instead of slapped. We said in one of our cases, this implies that certain dangers that may be hazardous to unskilled persons need not be remedied if an expert and experienced stevedore could safely work around them. Right, and there's been no testimony, or I should say that. That's it. Wait, I don't think it's logical to conclude that the lack of a safety wire or a loose safety wire is not a danger to an expert and experienced longshoreman, but is to an inexperienced one, because the only way you can get to that assumption or to get to that conclusion is to assume an expert and experienced longshoreman is never going to need safety equipment because he's an expert and inexperienced. That isn't the point at all. That isn't the point at all. The point is this particular accident, what would an experienced longshoreman, an unskilled longshoreman have done acting reasonably? And we don't know that. We do. Both, in our pursuit, and Leo Nagle testified that the way Joseph was attaching the pad eye was appropriate. The only accident that happened here was that little Joseph lost his balance. So unless someone's going, unless the rule is we had to have someone testify, well, an expert and experienced longshoreman loses balance. And that shouldn't be the standard of the standard because that's such a basic assumption or such a basic fact that's within the jury's... Isn't there a why question? Why the person lost their balance? Well, in the testimony here, well, there's no, we don't know why he lost his balance. Joseph doesn't know. And there's no evidence, no one knows why he lost his balance. The assumption is that the barge was moving around, but everyone agreed that no one knows exactly why he lost his balance. And on the expert issue, I would like to point the court to the Salem v. United States Mines Company case. And in that case, which was a negligence case against a vessel. That's not a longshoreman case, but it was a certain negligence claim. And that's 370 U.S. 31. The issue was whether or not the vessel should have had railings around the radio tower. And the United States Supreme Court said, that's not an issue that requires expert testimony by a naval architect. That's an issue that the jury can decide without expert testimony. And in this case, the issue is far simpler. The issue isn't whether or not railings should be installed. The issue is whether or not a loose safety wire should have been tied. The loose safety wire that the defendant's own accident report admitted should have been tied. And that because it wasn't tied, it caused Joseph's accident. Why don't you address, your time is almost up. And I guess most of your remarks also go to your negligence claim. Right. I think I addressed basically both claims. One specific issue I addressed in the short time I have is this claim that, well, the stevedore should have fixed the loose safety wire before the accident. And, of course, it is not in defense of the turnover duty that the stevedore should have remedied the defective safety equipment. And actually this court has recognized in Martinez, 903 F. 2nd. 606, where a longshipman fell through an unguarded ladder opening, that it was a question of fact whether or not that unguarded opening was a danger. And even though the stevedore could have put up railings. And, again, also in Stokesine, Subbing v. Reardon-Smith, 682 F. 2nd. 779. Ninth Circuit, 1982. The issue was a loose dead eye on deck that the longshoreman tripped over and was injured. Well, you've only got a little time. I'd like to ask you one question. Which one of these defendants is liable? All three are liable, although for different reasons. Northland vessel leasing. Naknek Barge Lines, which the defense admits is the defendant under 905B for the negligence claim. And then Northland Vessel Leasing is the proper defendant for the negligence per se claim. And then Northland Services, as the dual capacity defendant, they're both the employer and the vessel owner at the time of the murder, is also responsible for the negligence claim. So you have two defendants you would say are liable for negligence. Yes. And one had given up control of the ship to the other. So what was the negligence? Well, in the negligence claim, the Naknek Barge Lines, they were the damage charter, I believe, of the boat. And they were responsible for it. And they were the ones. And in turning over the vessel with the loose safety wire, they breached the turn. That was the negligence. And also Northland Services, which was the time charter, which also supposedly inspected the vessel before starting stevedoring operations, as the vessel owner, they were also responsible. I can understand. Okay. By the way, is Mr. Obrezka a stevedore for all purposes? Well, in the context of the – You just referred to the others as the stevedore. Stevedore operations and whatnot. Correct. So is Mr. Obrezka is considered a stevedore? At the time of his accident, what he was doing, he was a stevedore. That was not his normal profession. He had been hired at night. But at the time of his accident, he was a stevedore. Okay. You have about three minutes left for a reply. I think you're here. May I please report? My name is Jay Vincit. I represent Northland Services. Please take the NACDAC barge line in this matter. This case is a 905D severe turn-of-the-wheel case. As the court has recognized, the standard of care in that is specific and explicit. The vessel owner needs to use reasonable care to turn over barges free from conditions that pose an unreasonable hazard to expert and experienced longshoremen exercising reasonable care. In that respect, before any other discussion about what Mr. Obrezka did or what Northland Services did, a condition on the vessel has to be identified as dangerous to expert and experienced longshoremen or stevedores exercising reasonable care. And that is an abstract concept. I mean, it's not specific to the facts of the case, but it's more specific to the vessel itself. And that's what required expert testimony or testimony from any witness with some knowledge of longshoring, what longshoremen do, what stevedores do, what stevedores would normally do. And those three witnesses in this case who testified as to the problem, that had that knowledge, all testified that the Baranoff Trader was safe. Leo Nagel had multiple years of experience in the industry, testified that the Baranoff Trader was safe for an expert and experienced longshoreman. Luke Droppersloop, the barge master at the time, testified that he examined the barge prior to commencement of longshoring operations and had no concerns as to the safety. Bill Emery testified that even after the accident occurred, the vessel was still safe for operations. Well, how do you deal with the report that the inadequate and improperly secured safety lines was a major contributing cause to the accident? It is that establishes causation, but it does not establish the condition was dangerous to an expert and experienced stevedore. Well, now, wait a minute. This is a major and contributing cause. It doesn't say to an inexperienced person. It just is a major cause. And because of the lack of that, because it lacks any discussion of what they're talking about, Joseph Obrusca as an inexperienced stevedore. Well, why shouldn't I go to a jury? I mean, you can produce your experts, and maybe they will or won't, but common sense will let the jury know whether this was a major contributing cause or not. I don't understand how a judge can decide it. We're not just arguing the issue of causation at this point. No, of course, but I think this is a reasonable statement of negligence. Not only causation, but negligence. It says improperly and inadequately secure. That's negligence. And that goes to the reasonable care of the vessel owner. It does not go to whether the condition itself was dangerous. Well, now, who are you blaming as the vessel's owner? The original party or the one that chartered it? It would actually— Who do you want to put the blame on? Knack-Knack Barge Line was the vessel owner at that time. They'd be the defendants. They would be the defendants. You'd like to get the other services out. Northland Services is a dual-capacity employer, but its vessel capacity was as a time charter, which is fairly limited obligations as a vessel owner. I'm being very candid with you. That's your problem. You've got your own expert saying this was an inadequately and improperly secured line. Now, in the excerpt, it's not very clear who made that report. Well, who made it? It was a Northland Services employee who wasn't— It was a Northland Services employee who had subsequently left the company and wants to sale the merger. I can't hear you. I'm sorry. It was a Northland Services employee who had subsequently left the company after a merger with Ferris Energy. He was no longer employed? He was no longer employed. At the time he did the report? At the time he did the report, he was employed by Northland Services. He was employed by Northland Services in a capacity I'm not entirely sure of. If he was an employee that was a time charter or if he was a stevedore inside of the operation, or imagine a stevedore in an operation. But that's part of the problem with that report. It's not clear the experience of the employee, who he might be. Well, I'm sure he didn't get called. In any instance, he disappeared from the Earth, isn't he? I believe he's in Australia. What? I believe he's in Australia. Well, he might be had to recalibrate. Anyway, that's the difficulty. You've got to get over it. I would think you'd have to get over it before a jury. The problem is that establishes a causation. You said that three times. I know. I guess we understand each other. I guess my point is that that would be an unsuitable standard of care if it was specifically excluded with the amendments to the Longshore Act. We've got two alleged defects. We've talked about the loose wire. There also is the allegation that a third course of wire should have been supplied. Again, the testimony from the Longshoremen with knowledge and with experience in the industry all testified that lack of grab wire was not expected or necessary within the four unmanned deck cargo barges. And it's not all barges everywhere. It's just unmanned deck cargo barges. And they testified it was not, the lack of third wire did not render the vessel unsafe. In applying, and there's no testimony or no evidence from the plaintiff that the lack of third wire rendered it unsafe. They just relied on the doctrine of negligence per se. The doctrine of negligence per se should not apply because the doctrine requires that the safety statute or regulation be adopted to protect the relevant class of persons. Again, we're talking about expert experience Longshoremen. There's nothing to suggest that the Coast Guard regulation was adopted specifically to protect those expert experience Longshoremen. Counsel in his argument says, I do have evidence, and I got that evidence from your experts. As to that standard, what's your response to that? That's, just the fact that Joseph Briscoe was doing what an expert experience stevedore was doing, would have done, does not prove that the hazard was dangerous to an expert experience Longshoreman. All it means is that, in an abstract, he was there. What did you say? All it proves is what? That the accident occurred. It does not prove why it occurred, it does not suggest why it occurred, or what an expert experience Longshoreman would expect, or would know, the dangers that a barge would present to an expert experience Longshoreman. And that's evidence that charter fact needs an understanding of how a Longshoreman would look at this barge, what dangers would be on the barge, and how they would correct those dangers. Well, if I understand your response, it is that they may have been doing the acts of an expert Longshoreman at the time, but there's more to the picture than that. You need to have testimony of how an expert would have reacted, or what? Well, would have viewed the condition that they're alleging caused the accident. I'm not answering your question very well. I apologize for that. You're letting your voice drop. Sorry. The fact that an accident occurred does not prove that a condition is hazard to an expert experience Longshoreman. There are multiple hazards, and there can be multiple hazards on a vessel. They can be dangerous to other people, and they can cause accidents. But that alone does not prove, and I don't buy the turnover duty case. You have only a certain, very select group of conditions that can be actionable. What question then was left out in the examination of your witnesses? I'm not entirely sure. Well, counsel says they were doing what an expert would do. What else did counsel have to show? What specific answers did he need? He needed to ask, and he needed specific answers that said the loose wire would have been dangerous to any expert experience student, no matter what they were doing, no matter how much care they were taking. And that would have been the required proof, that the loose wire or the lack of a third wire would be dangerous, especially in the face of the testimony that it was not dangerous or did not pose a risk. I'm not sure I understand that answer. That is, in other words, he should have produced expert testimony that an expert stevedore or longshore worker working in this situation would have done something different? Not necessarily, Your Honor. What they needed to produce was that the longshore worker or an expert would look at that, look at the wire, and decide that it was dangerous. And the one that your voice drops away. And decide that it was dangerous. And then stop working. And then stop working. I think he would have done something different, would not have worked. Or, and actually that would go then, if they produced that evidence, then the question of reasonableness and unreasonableness and reasonable care would have arisen. And from the perspective of the vessel, should they have stopped working, should they have stopped the stevedore from working, or should the stevedore have stopped working? So an experienced stevedore in that situation would have realized that this was a dangerous condition and would not have lashed down. Well, if we're talking about the loose wire, or actually even the third wire, the stevedore, in this case, Luke Dropper's fleet, Norfolk Services, inspected the vessel prior to commencement of operations, modified the, or tightened up the wires in certain locations, expected it for damage and breakage, and if needed to, could have strung anything that went in there, or changed, modified the wire, the safety wire, the perimeter wire, as they deemed fit. And so the stevedore, in this case, Norfolk Services, then, to have the ability that, if they exercised reasonable care, to recognize the hazard, modify the hazard, fix the hazard, therefore, the vessel owner shouldn't be held responsible for that, because the stevedore should have exercised reasonable care and corrected it. If I follow you, you're saying it's not negligence if the person who was affected by the bad condition should have seen the problem and done something about it. Not the individual worker. What's that? Not the individual worker. The stevedoring company employer would have had... So you're saying now that the real defendant is the services. That's the long-short defendant that they're immune from suit under 905B. They've paid their long-short benefits to the extent that they're liable for that, so their liability has been determined. We're talking about... Well, because they may be liable as employer. They are liable as employer. They may be as owner and as employer. If they're liable as employer, if the responsibility for correcting the defect rests with the stevedore, and only rests with the stevedore, then the vessel owner shouldn't be held responsible for it. Well, I thought we had a case, Shearing, that said you could be both owner and employer and responsible in both capacities. You can, except that Shearing adopted the Gravis test for dual-capacity employer, so you hypothetically divide the employer into the employer and the vessel owner, and you analyze their obligations based on what the vessel owner would have done versus what the employer's responsibilities were. So you can have a situation where both would be responsible, but you can also have a situation where the vessel owner wouldn't be responsible because the responsibility stayed with the longshoreman. Sorry, the stevedore. Does that answer your question? Well, as much as you can, I guess. In terms of the... Well, let me just... I don't mean to beat this to death, but I just want to make sure. So your last comment, though, I think it was clarifying to some extent, which was that you look at the stevedore operator, not so much the individual employee. Correct. Well, to the extent that the stevedore, or to the extent that the longshore employee is not acting in some negligent manner, but that's not the issue in this case, so it's not... It's not necessarily a decision in this case, but it would be a factor that we're going to in other cases. Okay. Finally, the application of the regulation, and I believe that this Court looked at it, the regulation does give the Coast Guard discretion to modify the rail requirements. It doesn't give it discretion to do a blanket exemption, does it? No, there's no actual indication... No, it gives them... There's no blanket exemption made in this case. The Marine Safety Manual says that this rail requirement doesn't apply to unmanned tank barges, but it's not... The Marine Safety Manual isn't the final say on each individual barge's application of safety measures. The Coast Guard, in the inspection, has to go on to the barges themselves and determine whether the railing requirements, because each one does have a specific line for safety equipments, including guardrails. Is that in the safety inspection here? At least... If you look on page 44 of the record... Oops. Certificate of inspection. Correct. I'm sorry, I may have... I didn't see where it had rails. Now that I said that, I'm struggling to find it. Sorry, Your Honor. Actually, I may have misspoken. It may be in the regulations regarding inspection. See, I see where it had life-saving equipment, but it doesn't list the rails. It talks about everything else. Marine boys, immersion suits, portable lifeboat radio, equipped with EPIRB. Okay. It may be in the regulations regarding the scope of inspection, and I would have to look at it in more depth to get the exact citation. And I apologize. Okay. Thank you. So the... And I'm sorry, I believe that the regulations state that the COI is not issued unless the Coast Guard officer of re-inspection determines that the vessel complies with all safety regulations. All safety regulations would include the rail requirements as well. So to say that that's the interpretation of the... To say that the interpretation given by the Coast Guard in the marine safety manual and the certificate of marine inspection is plainly erroneous or inconsistent is beyond or is not clearly shown in the record. The plaintiff has talked about how it would affect cargo operations, but it doesn't talk about how it would affect the vessel operations itself. For example, what the tugboat crew would say about the operation of the vessel and how the rail requirements would affect them in their operations. So that evidence is also lacking in the record. In sum, the evidence presented to the trial court did not establish that a condition on the barge was dangerous to an expert experienced in New York. The testimony was that the barge was safe and that the third wire would not be expected. The withdraw personally testified that while the wire may be slack, he didn't consider it unworkable and he didn't consider it a danger. There is evidence of a causation aspect of it, but that is not sufficient evidence to prove that a condition is dangerous to an expert experienced in New York. And finally, the regulation itself is not plain. Thank you very much. Thank you. Thank you. Thank you, Your Honors. I'll start off with, of course, this is Joseph's claim for dismissal and summary judgment and, consequently, all facts must be distributed in his favor, no reason why it persists in his favor. In regards to who made the report, Ben Burns, as counsel said, drafted the report. He did so after interviewing Luke Donkerson, Bill Emery, and Joseph Obruska, and this was shortly after the accident. So while Luke Donkerson and Bill Emery tried to minimize the danger of the slack wire several years later in the company of their attorney, at the time right after the accident, when Northland, when the defendants themselves concluded that the loose wire was a major contributing factor and a danger, that's what they were relying on, the statements from Luke Donkerson and Bill Emery. Now, and also I would like to point out that Leo Nago also said that safety wire should be taught and not noticed, and that's the defendant's own expert. And, indeed, that seems such a basic assumption or basic principle that it cannot be really controversy. And in prior cases in this court in which they addressed an issue of expert and experienced longshoremen, I give the example of the Bjarnson case where the longshoremen chose to climb up and over a railing and up and over a deck hatch and then climb down and pitch flag a short ladder. And the court said, well, in that case, you're not acting as an expert and experienced longshoreman. There are many other ways to avoid the hazard, to do your job without being injured, without experiencing that specific hazard. In here, with the loose safety wire and a missing third rail, there was no way for Joseph or any expert or experienced longshoreman to avoid the hazard to do the job. Now, counsel has said that, well, the stevedore should have decided not to stop working or that if he didn't, then the vessel owner says, well, since you've decided to prevent the hazard anyways, I've got to come in and fix it. But, of course, that's the duty to intervene test. That's a much narrower test to understand you, and that is not the claim Joseph is making. Under the defense's arguments, a vessel will have the ability to give a barge over to a stevedore with almost no safety devices or, in fact, with all their safety bars defective and just say, well, stevedore, you're responsible to go deal with them. We don't have to deal with it because you had the final opportunity to fix them. And that's not the rule under the turnover duty. It's not in defense to the turnover duty that, well, the stevedore had the last opportunity to fix the defective safety equipment because to have such a rule, that would either abrogate the primary duty under SINDI and the turnover duty, or say, the vessel must turn over a vessel in reasonably safe condition except for all the safety devices, which I think is an illogical result. Go ahead. Are all these defendants equally well capitalized or is there some not very able to pay damages? We attempted to obtain discovery into their ability to pay damages in the context of a Pearson claim. That motion is not... Our motion to compel on that issue was denied by the court as moot when we granted the defendant summary judgment on the claim. So we don't have the evidence as to that. I don't have any. I can't tell you right now that I think that they are undercapitalized more than they are capitalized. Thank you. If this case were to go to trial, would it be Hrabuska's burden as part of his affirmative case to produce evidence on the standard of care of an expert longshoreman? I think that he would have to show that there was a danger to an expert in experience longshoreman, but to prove that, I don't think he needs to have expert testimony. He doesn't need to have an expert to come in and say, put a stamp of authority on saying, a loose safety wire should be taught because that's a danger that applies to everyone, experienced or inexperienced. The only way it wouldn't apply the danger to an experienced longshoreman is if you presume that an experienced longshoreman is never going to lose his balance. He's never going to need to rely on safety devices. So if you were to go to trial just on this record, what would you argue to the jury that shows the evidence of the standard of care by an expert experienced? Well, I think we have to... that safety wires should be taught. And we have the basic... the defense's own expert report that showed the effect of having a loose safety wire, which is it lets you fall over the side of the bars, which you shouldn't be able to do. And then we have the jury's common knowledge. I mean, for example, if you have a log in the middle of a road and you drive on the log, you need to have an expert come and say, yeah, it was dangerous to have a log there. Well, that's true. That's true. But that's far from the case we have here, as I'm sure you'll admit. If I understand your argument, you're saying you don't need an expert longshoreman to testify in this case. Just as you didn't need an expert naval architect to testify, there should be railings... No, I'm talking about this case. In this case, no. I don't believe we need an expert. So what you're saying is that even though the Coast Guard's granted an exemption that they don't have to have three wires, you don't need an expert to tell you that if there had been three wires, maybe this wouldn't have happened. Well, because a third wire would have been in the middle wire and it clearly would not have happened. If there had been a third wire, that would have stopped Joseph from falling over. And that's just based on logic of where he fell over. He fell between the two wires. I think the logic is wonderful, but what you don't get to is the requirement that it be in the eyes of an expert longshoreman, which our cases have always required. Correct. Because I don't believe that having the missing third wire or having a loose safety wire is not a danger to experts while it is a danger to everybody else. So I don't see how an longshoreman that's an expert in experience, how that's not a danger to him because he just is like everybody else. I understand you don't see that. That's been the argument. But the issue is whether it's required under the law. What you're saying is because it's dangerous to everybody, it must necessarily be dangerous to an experienced longshoreman. That doesn't necessarily follow. I think that in this case, for certain types of dangers, that's true. For example, in the Bjarnson case, that was a case where it was not a danger to an expert longshoreman while it was a danger, or it might have been a danger to everybody else. In this case, it is a danger to both everybody else and expert longshoremen. And again, we have the testimony from Lee and Engel that it should have been taught. I think there's no doubt that a safety device, a defective safety wire, is a danger to everybody, expert or inexperienced. And I just don't believe that we need to have an expert to come in to just put a simple, yeah, a loose safety wire should be taught. Or come in and testify that how an expert would not have been considered this a danger and why. We don't need that because no one could testify to that. Is that your point? I think that in this case, another issue here is we have kind of limited evidence. What can an expert come in and say? We don't have a measurement of how loose the wire was. Joseph couldn't get it because he was on the medevac to Anchorage because he had a very, very serious injury. And the defense didn't measure it. So all we have is this picture. So we have an expert to come in and say, look at the picture and say, yeah, that's loose. Yeah, that was a danger to an expert inexperienced longshoreman. At the time of turnover. Right, at the time of turnover. Yeah. Okay. Thank you. Thank you. Thank you.
judges: Wallace, Noonan, Paez